UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ROCCO SIRIANO,** *et al.***,**

    **Plaintiffs,**

    v.

**GOODMAN MANUFACTURING
COMPANY, L.P.,** *et al.***,**

    **Defendants.**

**Civil Action 2:14-cv-1131
Judge George C. Smith
Magistrate Judge Elizabeth P. Deavers**

## OPINION AND ORDER

Plaintiffs bring this breach of warranty, products liability, and consumer protection action against Defendants, alleging that the evaporator coils and condenser coils found in Defendants' air conditioners, air handlers and heat pumps have defects that cause "premature corrosion and holes or cracks in the coils." (ECF No. 1 at 2.) This matter is before the Court for consideration of Plaintiffs' Motion to Compel Discovery Related to Condenser Coils (ECF No. 45), Defendants' Response in Opposition(ECF No. 46), and Plaintiffs' Reply (ECF No. 48). For the reasons that follow, Plaintiffs Motion is **GRANTED IN PART**.

### I. BACKGROUND

**A.**     **Claims, Defenses, and Defendants' Motion to Dismiss**

The Complaint contains the following allegations. Defendant Goodman Products' copper coils, as the result of a design or manufacturing defect, are too thin and prematurely corrode or crack causing refrigerant to leak through the fissures. (ECF No. 1 at 2.) The defects are

widespread, affecting as much as 80% of the products sold. (*Id.*) Defendants knew about, but failed to disclose, the defects. (*Id.*) Defendants deny these allegations. (ECF No. 41 at 2.)

Defendants filed their Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on December 1, 2014. (ECF No. 32.) As explained in the District Judge's August 18, 2015 Opinion and Order, this Court found that "Plaintiffs' Amended Complaint clearly alleges defects with Goodman's evaporator *and* condenser coils." (ECF No. 40 at 6.) Plaintiffs' claims regarding condenser coils, therefore, survived Defendant's Rule 12(b)(6) challenge and remain pending in this matter. (*Id.*)

**B.**     **Plaintiffs' Motion to Compel**

In their Motion, Plaintiffs seek a Court Order compelling Defendants to fully respond to a number of outstanding requests for production of documents. Specifically, Plaintiffs posit that Defendants' responses to the following discovery requests related to condenser coils are deficient:

> **REQUEST FOR PRODUCTION NO. 3:**
>
> All documents that reflect complaints received by you regarding leaking of refrigerant from evaporator and/or condenser coils in the Goodman Units.
>
> **REQUEST FOR PRODUCTION NO. 4:**
>
> All documents related to your investigation of an/or response to complaints received by you regarding leaking of the evaporator and/or condenser coils in the Goodman Units.
>
> **REQUEST FOR PRODUCTION NO. 6:**
>
> All documents related to any investigation or study related to refrigerant leakage associated with copper evaporator or condenser coils in the Goodman Units. Documents responsive to this request include documents that relate to evaporator and/or condenser coils in residential air handlers, central air conditioning, and

heat pump (including packaged) units sold by you under the Goodman and/or Amana trade names generally..

**REQUEST FOR PRODUCTION NO. 7:**

All documents related to any investigation or study related to evaporator and/or condenser coil failure and/or replacement in the Goodman Units.  Documents responsive to this request include documents that relate to evaporator and/or condenser coils in residential air handlers, central air conditioning, and heat pump (including packaged) units sold by you under the Goodman and/or Amana trade names generally.

**REQUEST FOR PRODUCTION NO. 8:**

All documents related to any investigation or study related to corrosion of evaporator and/or condenser coils in the Goodman Units.  Documents responsive to this request include documents that relate to evaporator and/or condenser coils in residential air handlers, central air conditioning, and heat pump (including packaged) units sold by you under the Goodman and/or Amana trade names generally.

**REQUEST FOR PRODUCTION NO. 9:**

All documents related to any investigation or study related to the specifications of the evaporator and/or condenser coils in the Goodman Units to determine whether such specifications were adequate or inadequate.  Such specifications would include tube wall thickness, coil materials, coil coatings, and tube wall shape and/or texture.  Documents responsive to this request include documents that relate to evaporator coils in residential air handlers, central air conditioning, and heat pump (including packaged) units sold by you under the Goodman and/or Amana trade names generally.

**REQUEST FOR PRODUCTION NO. 10:**

All documents related to any investigation or study related to whether any fluids (including, but not limited to oils, lubricants, and/or cleaning chemicals) used in the production of Goodman Units are, or may be, a cause of, or contributor to, corrosion of the evaporator and/or condenser coils in the Goodman Units.  Documents responsive to this request include documents that relate to evaporator and/or condenser coils in residential air handlers, central air conditioning, and heat pump (including packaged) units sold by you under the Goodman and/or Amana trade names generally.

**REQUEST FOR PRODUCTION NO. 11:**

All documents reflecting instructions given to your employees or third parties acting on your behalf in responding to complaints regarding evaporator or condenser coil replacements and/or failures related to the Goodman Units. Documents responsive to this request include documents that relate to evaporator or condenser coils in residential air handlers, central air conditioning, and heap pump (including packaged) units sold by you under the Goodman and/or Amana trade names generally.

**REQUEST FOR PRODUCTION NO. 12:**

All documents related to any investigation or study related to the compatibility of evaporator and/or condenser coils in the Goodman Units to accommodate the use of HFC-410A refrigerant, including the increased operational pressures as well as contact between the refrigerant and the coil. Documents responsive to this request include documents that relate to evaporator and/or condenser coils in residential air handlers, central air conditioning, and heat pump (including packaged) units sold by you under the Goodman and/or Amana trade names generally.

**REQUEST FOR PRODUCTION NO. 13:**

All documents reflecting installation manuals, repair manuals, guides, or service instructions regarding the Goodman Units.

**REQUEST FOR PRODUCTION NO. 14:**

All documents reflecting communications you have had with your dealers and/or distributors regarding failure of the evaporator and/or condenser coils in the Goodman Units. Documents responsive to this request include documents that relate to evaporator and/or condenser coils in residential air handlers, central air conditioning, and heat pump (including packaged) units sold by you under the Goodman and/or Amana trade names generally.

**REQUEST FOR PRODUCTION NO. 15:**

All documents related to any investigation or study related to replacing copper tube evaporator and/or condenser coils with aluminum tube coils or coated coils or coils manufactured from other materials in a Goodman Unit. Documents responsive to this request include documents that relate to evaporator and/or condenser coils in residential air handlers, central air conditioning, and heat pump

(including packaged) units sold by you under the Goodman and/or Amana trade names generally.

**REQUEST FOR PRODUCTION NO. 16:**

All schematics, design specifications, bill of materials, assembly documents, manufacturing process documents, documents describing design changes, and other documents reflecting the design of the evaporator and/or condenser coils in the Goodman Units.

**REQUEST FOR PRODUCTION NO. 17:**

All warranty claims you have received related to evaporator and/or condenser coils for the Goodman units, including all warranty claim forms (for example, Form RF000007 and equivalent or similar such forms.

**REQUEST FOR PRODUCTION NO. 18:**

All documents reflecting claims and/or payment for any costs (including the provision of replacement parts) related to evaporator and/or condenser coil replacement and/or failure for the Goodman Units.

**REQUEST FOR PRODUCTION NO. 19:**

All documents reflecting or relating to any program to reimburse or remunerate dealers or distributors of the Goodman Units for evaporator and/or condenser coils in the Units that had been replaced.  Documents responsive to this request include documents that relate to evaporator and/or condenser coils in residential air handlers, central air conditioning, and heat pump (including packaged) units sold by you under the Goodman and/or Amana trade names generally.

**REQUEST FOR PRODUCTION NO. 20:**

All records summarizing, categorizing, and/or documenting evaporator and/or condenser coil failures in the Goodman units.  Documents responsive to this request include documents that relate to evaporator and/or condenser coils in residential air handlers, central air conditioning, and heat pump (including packaged) units sold by you under the Goodman and/or Amana trade names generally.

**REQUEST FOR PRODUCTION NO. 21:**

Documents reflecting the fluids (including, but not limited to, oils, lubricants, and cleaning chemicals) used in processing and manufacturing evaporator and/or condenser coils in the Goodman Units.

**REQUEST FOR PRODUCTION NO. 22:**

All lists of approved suppliers for evaporator and/or condenser coil tubing for the Goodman Units.

**REQUEST FOR PRODUCTION NO. 23:**

All specifications (including, but not limited to, you [*sic*] internal tubing specifications and industry standards, such as ASTM or SAE) used to describe the tubing for the evaporator and/or condenser coils in the Goodman Units.

**ESI SEARCH TERMS:**

((condenser coil OR outside coil) w/20 (bad* OR complain* OR corro* OR crack* OR damag* OR defect* OR design* OR engineer* OR guarantee* OR hole* OR leak* OR pinhol* OR redesign* OR replac* OR switch* OR warrant*)) and not (evapor*)

((copper AND (coil* OR condense* OR outside)) w/20 (bad* OR complain* OR Corro* OR crack* OR damag* OR defect* OR design* OR engineer* OR guarantee* OR hole* OR leak* OR pinl1ol* OR redesign* OR replac* OR switch* OR warrant*)) and not (evapor*)

(condense* w/20 (bad* OR complain* OR corro* OR crack* OR damag* OR defect* OR design* OR engineer* OR guarantee* OR hole* OR leak* OR pinho1* OR redesign* OR replac* OR switch* OR warrant*))

(formicary and (condenser OR outside)) and not (evapor*)

(("product quality report" OR PQR) w/20 (coil* OR copper OR corro* OR condense* OR outside OR freon OR hole* OR leak* OR pinhol* OR crack OR vibrat* OR refrigerant*)) and not (evapor*)

(refrigeran* w/20 (bad* OR corro* OR crack* OR damag* OR defect* OR design* OR engineer* OR hole* OR leak* OR pinhol* OR vibrat* OR

  redesign*))

  (("return material authorization" OR RMA) w/20 (coil* OR copper OR condenser OR outside OR tub*)) and not (evapor*)

  (("Special Project Authorization" OR SPA) w/20 (coil* OR copper OR condenser OR outside OR freon OR move to OR refrigerant* OR thick* OR thin* OR corros* OR vibrat* OR tub*)) and not (evapor*)

(ECF Nos. 45-4 & 45-5.)

  Defendants oppose Plaintiffs' Motion on a variety of grounds as discussed more fully below.

## II. STANDARD OF REVIEW

  Plaintiffs have moved the Court for an order compelling Defendants to respond to their discovery requests. Federal Rule of Civil Procedure 37 permits a party to file a motion for an order compelling discovery if another party fails to respond to discovery requests, provided that the motion to compel includes a certification that the movant has, in good faith, conferred or attempted to confer with the party failing to respond to the requests. Fed. R. Civ. P. 37(a)(1). The Court is satisfied that this prerequisite to a motion to compel has been met in this case.

  Determining the scope of discovery is within this Court's discretion. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). As the United States Court of Appeals for the Sixth Circuit has recognized, "[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). In particular, discovery is more liberal than the trial setting, as Rule 26(b) allows discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[1] Fed. R. Civ. P. 26(b)(1). In considering the scope of

---

[1] The 2015 amendments to the Federal Rules of Civil Procedure took effect on December 1, 2015. By order of the U.S. Supreme Court, the revised rules "shall govern in all proceedings in

discovery, the Court may balance Plaintiffs' "right to discovery with the need to prevent 'fishing expeditions.'" *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 907 (6th Cir. 2009) (quoting *Bush*, 161 F.3d at 367).

### III. ANALYSIS

**A. The *McVicar* Stipulation**

In order to resolve a motion to compel in a separate, but related, case, the parties stipulated to the scope of discovery in *McVicar v. Goodman Global, Inc.*, No. 8:13-cv-1223-DOC-RNB (C.D. Cal.). Defendants argue that the *McVicar* Stipulation, (ECF No. 22-1), governs the scope of discovery in the present case because Plaintiffs agreed to it. (ECF No. 46 at 5.) The *McVicar* stipulation specifically excludes condenser coil references from the ESI search results. (ECF No. 22-1.) Plaintiffs counter that the *McVicar* stipulation arose in response to a specific motion to compel in a matter that did not include condenser coil claims and should, therefore, be restricted in its preclusive effect to that case only. (ECF No. 48 at 3.) Rather, Plaintiffs argue that the *McVicar* Stipulation governed discovery in the instant case only pending the resolution of Defendants' Motion to Dismiss. (ECF No. 45-1 at 4.)

The parties' Rule 26(f) report incorporates the *McVicar* Stipulation. (ECF No. 22.) In his affidavit, Plaintiffs' counsel states that Plaintiffs agreed to coordinate discovery regarding related cases with Defendants. (ECF No. 48-1 at 3.) He also states, however, that Plaintiffs "did not agree to either consolidate or forego condenser coil document discovery," but merely "agreed to defer document discovery related to condenser coils until after the Court ruled on the Defendant's motion to dismiss." (*Id.*) Defendants' counsel counters that no discussion of phased or deferred discovery occurred during the Rule 26(f) conference. (ECF No. 46-6 at 4.)

---

civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." Letter of Transmittal to Congress, April 29, 2015.

Defendants conclude that Plaintiffs, therefore, have waived discovery related to their condenser coil claims. (ECF No. 46 at 6.)

Defendants' argument that Plaintiffs waived their right to condenser coil discovery by joining in the parties' 26(f) report is unconvincing. A review of the underlying *McVicar* Motion to Compel reveals no mention of condenser coils but makes multiple references to evaporator coils on nearly every page, which suggests that the *McVicar* Stipulation is an inapt guide to the proper scope of discovery in this case. (ECF No. 48-2). Three Plaintiffs in this case specifically put forward condenser coil claims, which, as noted above, have already survived Defendants' Rule 12(b)(6) challenge. (ECF No. 32-1 at 6-7 & 20-21; ECF No. 40 at 6.) The Court, therefore, cannot conclude that by joining the Rule 26(f) report Plaintiffs intended to waive all discovery related to these claims.

Even assuming, *arguendo*, Defendants' interpretation of the Rule 26(f) report is correct, however, this Court is not thereby bound by the *McVicar* Stipulation. In its Scheduling Order, the Court did not incorporate the *McVicar* Stipulation as the outer boundaries of discovery in this matter. (ECF No. 24.) The Court utilizes the parties' Rule 26(f) report as a guide to set reasonable deadlines for the joining of parties, amending the pleadings, filing motions, and completing discovery. Fed. R. Civ. P. 16(b). Furthermore, the Court always retains the sound discretion to determine the appropriate scope of discovery. *Bush*, 161 F.3d at 367. The outer boundaries of permissible discovery are quite broad in the federal courts, encompassing "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Because Plaintiffs' condenser coil claims remain, the Court finds that the *McVicar* Stipulation does not remove the disputed discovery requests from the scope of discoverable information.

9

### B. Burden upon Defendants and Scope of Discovery under Rule 26(b)(1)

Defendants submit that production of the requested information would be unduly burdensome. (ECF No. 46 at 16.) Specifically, Defendants assert that gathering the information Plaintiffs request would require more than the "4,000 hours of lawyer review time over several months" they expended in preparing responses to discovery pursuant to the *McVicar* Stipulation.[2] (ECF No. 46 at 7.)

Generally, discovery is available "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "'[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.'" *Info–Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d 448, 457 (6th Cir. 2008) (quoting *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007). "Specifically, the Federal Rules of Civil Procedure instruct district courts to limit discovery where its 'burden or expense . . . outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" *Surles*, 474 F.3d at 305 (quoting former Fed. R. Civ. P. 26(b)(2)(C)(iii)). These factors are retained in revised Fed. R. Civ. P. 26(b)(1), reflecting "their original place in defining the scope of discovery." Fed. R. Civ. P. 26 advisory

---

[2] Specifically, Defendant posits that,

> Based on its experience from the review conducted to comply with the Stipulation, and assessing the burden conservatively, Goodman estimates that the review Plaintiffs are now requesting would involve well over 4,000 hours of lawyer review time and take at least as long—if not longer—than the review conducted to comply with the Stipulation given the greater volume of documents and the efficiencies lost.

(ECF No. 46-6 at 8.)

committee's note to 2015 amendment.[3] "Restoring proportionality" is the touchstone of revised Rule 26(b)(1)'s scope of discovery provisions. *Id*.

In the instant case, the discovery sought by Plaintiffs is directly related to their claims, which include assertions of defects in the design and manufacture of Defendants' condenser coils. It is highly unlikely that Plaintiffs could discover similar information from another source or in another manner. Defendants are, therefore, in a unique position with respect to these documents. Similarly, Plaintiffs assert several breach of warranty claims. Documents related to warranty complaints filed by other customers, who are not parties to this litigation, would be easily accessible to Defendants but almost completely inaccessible to Plaintiffs. Additionally, it is much more efficient for Plaintiffs to seek information related to Defendants' dealings with their distributors from Defendants themselves, who have access to all of those records, rather than assemble it piecemeal from the distributors themselves. Furthermore, Defendants' corporate resources vastly exceed Plaintiffs', and, to date, Defendants have expended relatively little in complying with discovery *in this matter*. Defendants' production thus far consists of the electronic disclosure of documents previously collected and reviewed pursuant to discovery in other, related cases.[4] (ECF No. 48 at 4.) Lastly, because Plaintiffs in their Complaint present a putative class action that could include a significant number of class members who each purchased costly products from Defendants, the amount in controversy in this matter is

---

[3] The revised Rule 21(b)(1) factors are as follows:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery out-weighs its likely benefit.

[4] Indeed, the bulk of Defendants' arguments about burdensomeness relate to the time and cost associated with assembling, reviewing and producing the documents for the *McVicar* Stipulation.

potentially very large.

In weighing the Rule 26(b)(1) factors, the Court is mindful that Defendants' discovery costs could be significant. The Sixth Circuit, however, has held that limiting the scope of discovery is appropriate when compliance "would prove *unduly* burdensome," not merely expensive or time-consuming. *Surles*, 474 F.3d at 305 (emphasis added). Revised Rule 26(b)(2)(B) retains the "*undue* burden or cost" standard for imposing limitations on discovery of ESI. Fed. R. Civ. P. 26(b)(2)(B) (emphasis added).[5] Defendants have not proposed alternative methods of discovery enabling some lesser degree of production, such as limiting the search to certain offices or files.

Nevertheless, Federal Rule of Civil Procedure 1 now provides that the civil rules "should be construed and administered, *and employed by the court and the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1 (emphasis added). The revision makes clear that the parties and the courts have an obligation to cooperate to the extent possible to achieve the goals set out in the Rule. As the Committee Note to the Rule observes, "[e]ffective advocacy is consistent with—and indeed depends upon—cooperative and proportional use of procedure." Fed R. Civ. P. 1 advisory committee's note to 2015 amendment.

The amendments to the Federal Rules of Procedure also contemplate active judicial case

---

[5] The 2015 Advisory Committee Note to revised Rule 26 emphasizes "proportionality" and observes that disproportionality does not necessarily result from lopsided burdens of production:

> Some cases involve what often is called "information asymmetry." One party—often an individual plaintiff—may have little discoverable information. The other party may have vast amounts of information that can be readily retrieved and information that is more difficult to retrieve. In practice these circumstances often mean that the burden of responding to discovery lies heavier on the party who has more information, and properly so.

management.  To that end, the Court will schedule a discovery conference with the parties to discuss whether and to what extent discovery should proceed in phases.  For instance, it appears to the Court that Plaintiffs may first want to discover whether Defendants received any complaints or warranty claims regarding the condenser coils before discovering documents related to investigations, schematics and the all-encompassing "[a]ll records summarizing, categorizing, and/or documenting evaporator and/or condenser coil failures. . . ."  (RFP No. 20.)  In the interim, the parties are directed to engage in further cooperative dialogue in an effort to come to an agreement regarding proportional discovery

### C. The Sufficiency of Plaintiffs' Claims

One final word.  Defendants submit that Plaintiffs' discovery requests are disproportionate "in the face of the thin and largely inapplicable allegations regarding condenser coils."  (ECF No. 46 at 17.)  By rule, discovery is available regarding any "matter that is relevant to any party's claim."  Fed. R. Civ. P. 26(b)(1).  As noted above, this Court has already found Plaintiffs' condenser coil claims sufficient to withstand Defendants' Rule 12(b)(6) challenge.  Defendants' efforts to relitigate their Rule 12(b)(6) motion through this discovery motion are not well-taken.

### IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Compel is **GRANTED IN PART**. (ECF No. 45.)

**IT IS SO ORDERED.**


Date: December 9, 2015                              /s/ *Elizabeth A. Preston Deavers*
                                                   ELIZABETH PRESTON DEAVERS
                                                   UNITED STATES MAGISTRATE JUDGE